UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LN PROFESSIONAL MANAGEMENT LLC d/b/a MEDICAL MANAGEMENT PROFESSIONALS, <br><br>                Plaintiff, <br><br>v. <br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHIELD OF TEXAS, <br><br> Defendant and Counter-Claimant, <br><br>v. <br><br>LN PROFESSIONAL MANAGEMENT LLC d/b/a MEDICAL MANAGEMENT PROFESSIONALS, CLAY ELLIS, LEWIS NICHOLS, and MICHAEL JOHN CORTEZ <br><br>                Counter-Defendants. | Cause No. 4:24-CV-00514-SDJ <br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S SURREPLY TO DEFENDANT HEALTH CARE SERVICES CORPORATION'S MOTION TO DISMISS**

Plaintiff LN Professional Management d/b/a Medical Management Professionals ("MMP") files this Surreply to Defendant Health Care Service Corporation's ("Blue Cross") Motion to Dismiss.

## INTRODUCTION

Contrary to Blue Cross's contentions, MMP's Response did not "confuse the issue[s]" or "misstate" and/or "ignore" relevant law. Reply 1. Rather, MMP's Response streamlined the issues for the Court and did not spend time making meritless arguments. In short, to deny Blue Cross's Motion, the Court need only decide that (1) Blue Cross—a commercial insurer—is not shielded by government immunity; (2) it is not clear from the face of MMP's Complaint that Blue Cross's tortious interference was a legitimate petitioning activity that resulted in valid government action; and (3) MMP sufficiently pleaded a tortious interference claim. Each of those holdings is supported in MMP's Response and again in this Surreply. Blue Cross's Motion should therefore be denied.

## ARGUMENT

I. **Blue Cross—a commercial insurer—is not shielded by governmental immunity.**
   A. **Blue Cross is not entitled to derivative sovereign immunity for its tortious interference.**

According to Blue Cross, the Supreme Court of Texas's decision in *Nettles* stands for the proposition that "private entities cannot be found liable where an element of a claim against them requires proving that a government actor committed an act for which the government actor is immunized." Reply 3 (citing *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738-39 (Tex. 2020)). Blue Cross is incorrect. As a threshold matter, *Nettles* discusses *derivative* immunity. "Derivative" refers to "[s]omething that has developed from or been produced from something else." DERIVATIVE, Black's Law Dictionary (12th ed. 2024). This implies that the conduct for which an actor might invoke derivative immunity occurred *after* a government action. *See Nettles*, 606 S.W.3d at 738-39 (discussing whether a private

2

contractor was immune for its actions "subsequent" to the underlying government conduct).

This is distinct from the case at hand. Blue Cross's tortious interference was not an action "subsequent" to the District's breach, or at the direction of the District, or an obligation of Blue Cross's pursuant to an underlying fraud being committed by the District. Rather, this case presents the direct inverse of the derivative liability theory that was the subject of *Nettles*. In this case, the first-in-time, underlying tortious conduct was Blue Cross's and Blue Cross's alone. Derivative immunity is thus inapplicable. *Cf. Pritt v. John Crane Inc.*, 636 F. Supp. 3d 253, 259 (D. Mass. 2022) ("[T]he doctrine of derivative sovereign immunity is not a viable defense to government contractors whose own negligence caused the harm.").

In any event, *Nettles* addressed derivative sovereign immunity for private contractors. *See Nettles*, 606 S.W.3d at 731 ("We have not had many opportunities to address whether a Texas government agency's immunity from suit ***might extend to its private contractors***.") (emphasis added). In that context,[1] the court held that derivative sovereign immunity applied to a private contractor because the plaintiff's "theories of conspiracy and of aiding and abetting against [the private contractor] are wholly derivative of an alleged underlying fraud ***by the [Lottery] Commission alone***." *Id.* at 738 (emphasis added). The Texas Supreme Court explicitly cabined this holding, explaining as follows:

> We note this will not be true of all aiding-and-abetting or conspiracy theories involving government as well as non-government actors. For example, the underlying tort could be committed by government as well as non-

---

[1] Contrary to Blue Cross's characterization, *Nettles* did not make a "separate reasoning and ruling" that applies outside the context of government contractor immunity. *See* Reply 3.

3

>government actors, or committed by non-government actors whom a government actor aided (or with whom the government actor conspired). ***We express no view on whether sovereign immunity will extend to non-government actors based on allegations of conspiracy or of aiding and abetting other than those before us.***

*Id.* at 738 n.11 (emphasis added). MMP does not assert a claim for conspiracy or aiding and abetting, so this holding is arguably irrelevant.[2] This makes sense, considering the Court based its holding on the fact that the underlying fraud was committed "by the [Lottery] Commission alone." *Id.* at 738.

Unlike in *Nettles*, MMP's claim for tortious interference does not rely solely on Somervell County Hospital's (the "District") breach of the Services Agreement. Rather, as with all tortious interference claims, MMP alleges that Blue Cross ***caused*** the District to breach the Services Agreement. *See* Reply 14. Therefore, Blue Cross is the bad actor—not the District. At best, Blue Cross can argue that the District, by breaching the Services Agreement, "aided" Blue Cross's tortious interference. But the *Nettles* court expressly excluded that situation from its holding. Therefore, Blue Cross is not entitled to derivative sovereign immunity based on *Nettles*.

>**B.   The state court did not find that the District was immune from suit and liability for MMP's breach-of-contract claim.**

Blue Cross continues to argue that the state court "considered and dismissed" a breach of contract claim in MMP's lawsuit against the District. Blue Cross is simply wrong, as the state-court record makes abundantly clear. At the hearing on the District's government immunity argument, MMP's counsel repeatedly emphasized that "[t]here is no

---

[2] Blue Cross tries to rope tortious interference into this holding based on the Austin Court of Appeals' holding in *Nettles*. *See* Mot. 8-9. But Supreme Court of Texas did not include tortious interference in its reasoning. Had the court intended to include tortious interference in its discussion, it could and would have done so.

breach of contract claim alleged." Ex. 2, Tr. at 9:7-21; *see also id.* at 6:12–13 ("There's no breach of contract claim in the petition.").

MMP made an oral request for leave to amend that the Court never ruled on and then filed an amended petition that included a claim for breach of contract the day after the hearing. But the state court never granted leave to file an amended petition, never held another hearing involving the breach of contract claim, and never considered whether the District was immune from a claim for breach of contract.

Indeed, the state court could not possibly have ruled that the District enjoys immunity from breach of contract because such a holding would be contrary to the express waiver of sovereign immunity in Chapter 271 of the Local Government Code:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Local Gov't Code § 271.152; *see Dallas Cnty. Hospital District v. Hospira Worldwide, Inc.*, 400 S.W.3d 182, 184 (Tex. App.—Dallas 2013, no pet.) ("Because the language defining a local governmental entity in section 271.151 clearly and unambiguously encompasses county hospital districts, we conclude the District's immunity from suit for Hospira's breach of contract claim has been waived by section 271.152."). The District's counsel acknowledged this authority and admitted that the District was *not* making immunity arguments against a breach of contract claim because "the statute [] says that there is a specific waiver for breach of contract." Ex. 2, Tr. at 5:11-14.

5

In short, Blue Cross cannot claim the benefit of issue preclusion on an issue that was never litigated or decided. The Court should reject Blue Cross's immunity arguments.[3]

## II.   *Noerr-Pennington* does not bar MMP's claim.

Blue Cross misunderstands MMP's arguments regarding the *Noerr-Pennington* doctrine. Indeed, MMP acknowledges several of Blue Cross's points, including that the *Noerr-Pennington* doctrine can apply to tortious interference claims and that the Fifth Circuit does not recognize a blanket "commercial exception" to the doctrine. Mot. 11. MMP also agrees that in certain circumstances, negotiating a settlement agreement with the government can be protected under the doctrine. *See id.* MMP does not agree, however, that "the gravamen of [its] complaint is that the Settlement Agreement itself constituted tortious interference." Mot. 9-10. Rather, MMP contends that Blue Cross used its power in the marketplace to coerce the District—a rural hospital—to breach its contract with MMP. Compl. ¶¶ 16-19. That tortious behavior started when Blue Cross refused to pay the District for claims for services rendered by MMP and was simply codified in the Settlement Agreement. *See id.* ¶ 15 ("[Blue Cross] improperly denied th[e] claims without any valid basis.").

This type of coercion is not a protectable "negotiation of [a] settlement [agreement]" that Blue Cross contends has been "universally determined to be protected petitioning

---

[3] MMP does not seek to relitigate in this case whether the District is entitled to governmental immunity. To the extent that Blue Cross contends that MMP is precluded from arguing that the District breached the Services Agreement, that argument must fail precisely because the issue of breach has never been previously litigated. *See Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 359 n.5 (Tex. 2019) ("[A] court must not proceed on the merits of a case until legitimate challenges to its jurisdiction [such as governmental immunity] have been decided."). Therefore, issue preclusion cannot apply. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (explaining issue preclusion applies only when "[t]he facts sought to be litigated in the second action were fully and fairly litigated in the first action").

activity." Reply 12. None of the cases Blue Cross cites stands for this proposition. In fact, two of those cases—*Greenwood Utilities* and *VIBO Corp.*—impliedly reject such a notion. In *Greenwood*, the plaintiff argued that the *Noerr-Pennington* doctrine did not apply because the defendant (a power company) coerced the government into adopting a favorable marketing policy by "refusing to wheel power [for the government] until it agreed to the restrictive conditions." *Greenwood Utilities Com'n v. Miss. Power Co.*, 751 F.2d 1484, 1500 (5th Cir. 1985). The court acknowledged that "this contention might support antitrust liability." *Id*. Ultimately, the court dismissed the theory ***at the summary judgment stage*** because the plaintiff "ha[d] produced no evidence that such coercive conduct ever occurred." *Id*. This is precisely what MMP argues here—*i.e.,* Blue Cross coerced the District to breach its contract with MMP. Compl. ¶¶ 16-19. MMP is entitled to discovery to determine whether that occurred or not. Dismissal based on the *Noerr-Pennington* doctrine, therefore, is not appropriate.

Additionally, the Sixth Circuit in *VIBO Corp*. applied the *Noerr-Pennington* doctrine to settlement negotiations and a subsequent agreement, but expressly noted that the government was "free to accept or reject" the agreements at issue, "regardless of the explicit or implicit encouragement of [defendants]." *VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 685 (6th Cir. 2012). That is not the case here. The District was not free to reject Blue Cross's demands because the District relies on Blue Cross's support. Compl. ¶¶ 16-19. Put simply, "coercion," as alleged here, is not the same type of "negotiation" that Blue Cross claims is universally protected under *Noerr-Pennington*. Mot. 12. This makes sense because by "coercing" the District into "settl[ing] the claims [at issue] for far less than [the District]

7

was owed," Compl. ¶ 19, the District itself was "made the victim of anticompetitive conduct," *Greenwood*, 751 F.2d at 1505. In these types of circumstances, the Fifth Circuit has explained that "no legitimate petitioning conduct [is] involved, and there [is] no *Noerr-Pennington* protection." *Id*. For this reason alone, the *Noerr-Pennington* doctrine does not apply.[4]

Additionally, this coercion induced the District to breach its contract with MMP, which is not a "valid government action" that triggers *Noerr-Pennington* immunity. *Id.* ¶ 20; *see Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988). As other courts have explained, the *Noerr-Pennington* doctrine protects not only the right to petition, but also the government's right to "take actions through its legislature and executive that operate to restrain trade." *Sanders v. Brown*, 504 F.3d 903, 912 (9th Cir. 2007). Unlike its powers to pass laws via legislative and executive powers, the government does not have unfettered discretion to breach its contracts. *See United States v. Winstar Corp.*, 518 U.S. 839, 843 (1996) (finding the government liable in damages for breach of contract).

Based on these authorities (and the others cited in MMP's Response) that limit the scope of *Noerr-Pennington*, it is not clear from the face of the Complaint that Blue Cross is entitled to *Noerr-Pennington* immunity. *See River Capital Advisors of North Carolina, Inc. v. FCS Advs., Inc.,* No. 4:10-cv-471, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011) (declining to grant a motion to dismiss based on an affirmative defense). Additionally, even

---

[4] Blue Cross attempts to escape this logic by arguing that its "bad intent or anticompetitive motivation" in "seeking government action is irrelevant to the application of *Noerr-Pennington*." Mot. 15 (quoting *VIBO Corp.*, 669 F.3d at 684). But "intent" and "motivation" refer to Blue Cross's *mindset*—not its *conduct*.

8

if *Noerr-Pennington* is implicated, the facts pleaded on the face of the Complaint do not preclude application of exceptions to *Noerr-Pennington*—including the sham litigation rule. *Id.* While it may be true that "a successful effort to influence government action . . . cannot be characterized as a sham," Mot. 13 (citation omitted), the conduct alleged here was not a "successful effort to influence" the District. Rather, Blue Cross's tactics were a successful effort to **strongarm** a rural hospital district who relies on Blue Cross's support to function. *See* Compl. ¶¶ 16-19. For these reasons, and those in MMP's Response, the Court should deny Blue Cross's motion to dismiss.

### III. MMP adequately pleads all elements of tortious interference.

Blue Cross again argues that MMP's tortious interference claim fails because MMP has "merely alleg[ed] nonrenewal." Reply 19. But MMP alleges that the District breached its obligation to pay for services rendered under the Services Agreement. Compl. ¶ 12. This meets the requirement to point to a "specific provision imposed on the third-party obligor." Reply 15. Moreover, MMP has alleged that Blue Cross "took an active part in persuading" the District to breach its contract with MMP. Reply 17 (citing *Poole v. AXA Equitable Life Ins. Co.*, No. 2:19-CV-23-Z-BR, 2020 WL 10050562, at *7 (N.D. Tex. Apr. 29, 2020)). It is unclear what else MMP must do to give Blue Cross "fair notice of . . . the claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). Blue Cross's Motion should therefore be dismissed in its entirety. Alternatively, MMP seeks leave to replead.

9

Respectfully submitted,

**REESE MARKETOS LLP**


By: _/s/ Tyler J. Bexley_
    Tyler J. Bexley
     Texas Bar No. 24073923
     tyler.bexley@rm-firm.com
    Pete Marketos
     Texas Bar No. 24013101
     pete.marketos@rm-firm.com
    Andrew Wirmani
     Texas Bar No. 24052287
     andrew.wirmani@rm-firm.com
    Jamison M. Joiner
     Texas Bar No. 24093775
     jamison.joiner@rm-firm.com
    Allison N. Cook
     Texas Bar No. 24091695
     allison.cook@rm-firm.com
    750 N. Saint Paul St., Suite 600
    Dallas, Texas 75201-3201
    214.382.9810 telephone
    214.501.0731 facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on October 9, 2024, a true and correct copy of this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

                              */s/ Tyler J. Bexley*
                              Tyler J. Bexley